UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
            :
ONEWEST BANK N.A.,                     :
            :
           Plaintiff,         :      14-CV-8916 (JMF)
            :
     -v-            :      OPINION AND ORDER
            :
LEHMAN BROTHERS HOLDING INC., et al.,     :
            :
           Defendants.      :
            :
------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 04/20/2015

JESSE M. FURMAN, United States District Judge:

      The present case involves a dispute between Plaintiff OneWest Bank N.A. ("OneWest" or "Plaintiff") and Defendants Lehman Brothers Holding Inc. and Aurora Commercial Corporation (together, "Lehman" or "Defendants") arising out of Plaintiff's servicing of mortgage loans previously owned by Defendants. Plaintiff contends that it properly serviced the loans and that Defendants are not entitled to certain files associated with the loans (the "Servicing Files"), and is seeking a declaratory judgment to that effect. Defendants disagree, and assert various counterclaims. Defendants now move to dismiss Plaintiff's request for attorney's fees. Plaintiff cross-moves to dismiss several of Defendants' counterclaims, and to amend its Complaint to remove one of its claims. For the reasons explained below, Defendants' motion to dismiss is DENIED, Plaintiff's motion to dismiss is GRANTED in part and DENIED in part, and Plaintiff's motion to amend is GRANTED.

**BACKGROUND**

The following facts, taken from the Complaint, the counterclaims, and attached exhibits, are assumed to be true for purposes of these cross-motions, with all reasonable inferences drawn in favor of the non-moving party. *See, e.g., Gonzalez v. Hasty*, 651 F.3d 318, 321 (2d Cir. 2011).

This case involves twenty-seven loans (the "Loans") that Defendants purchased from IndyMac Bank, F.S.B. ("IndyMac") pursuant to two sale and servicing agreements (the "Servicing Agreements"). (Compl. (Docket No. 1) ¶¶ 4-5). The Servicing Agreements, effective as of 2003 and 2005, granted IndyMac the right to service the Loans, and required it to use "Accepted Servicing Practices." (*Id.* ¶ 5; Am. Countercls. (Docket No. 35) ¶¶ 23-24). The Servicing Agreements also required IndyMac to "maintain with respect to each Mortgage Loan and . . . make available for inspection by any Purchaser or its designee the related Servicing File during the time the Purchaser retains ownership of a Mortgage Loan and thereafter in accordance with applicable laws and regulations." (Compl. ¶ 47).

In March 2009, following IndyMac's failure during the financial crisis, Plaintiff purchased the servicing rights to the Loans. (*Id.* ¶¶ 10-11). It continued to service the Loans pursuant to the Servicing Agreements through October 1, 2013, when the last loan was transferred and the Servicing Agreements were terminated. (*Id.* ¶¶ 61-64). Beginning in June 2014, Defendants, who incurred substantial losses on the Loans and believed that servicing errors made by OneWest and IndyMac may have contributed to those losses, started requesting access to the Servicing Files. (*Id.* ¶¶ 66, 68; Am. Countercls. ¶ 34). They invoked provisions of the Servicing Agreements providing that Plaintiff's possession of the Servicing Files was "in a custodial capacity only" and that "the ownership of all records and documents with respect to the related Mortgage Loan . . . shall vest immediately in" Defendants. (Am. Countercls. ¶ 35).

Plaintiff, however, maintained that its obligation to allow Defendants to inspect the Servicing Files ended when the Servicing Agreements were terminated, and therefore refused Defendants' requests.  (Compl. ¶¶ 71-72; Am. Countercls. ¶¶ 39, 45).

Plaintiff filed this lawsuit on November 7, 2014, seeking a declaration that Defendants are not entitled to access the Servicing Files, that it properly serviced the Loans, and that it was not liable for IndyMac's conduct predating its purchase of the servicing rights.  (Docket No. 1).  Among other things, Plaintiff seeks attorney's fees.  (*Id.*).  On December 15, 2014, Defendants filed a motion to dismiss Plaintiff's request for attorney's fees.  (Docket No. 9).  On the same day, Defendants filed an answer and asserted several counterclaims.  (Docket No. 12).  To the extent relevant here, the counterclaims (as amended on February 6, 2015 (Docket No. 35)), assert claims for breach of contract based on Plaintiff's allegedly improper servicing of the Loans and withholding of the Servicing Files, conversion, and recovery of chattel.  Plaintiff cross-moved to amend the Complaint on January 15, 2015, and to dismiss three of Defendants' counterclaims on February 27, 2015.  (Docket Nos. 27, 36).

## DISCUSSION

A motion pursuant to Rule 12(b)(6) challenges the sufficiency of the allegations in the complaint.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  To survive such a motion, the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  If the plaintiff

3

has not "nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

**A.     Defendants' Motion To Dismiss**

The Court begins with Defendants' motion to dismiss Plaintiff's request (contained in the Complaint's prayer for relief) for attorney's fees. (Compl. ¶ 109(d); *see* Mem. Law Supp. Defs.' Mot. To Dismiss Compl. In Part (Docket No. 10) ("Defs.' Mem. Supp. Defs.' MTD") 4-6).[1] Specifically, Defendants argue that, under the American Rule — which the parties agree applies here (Pl.'s Opp'n Defs.' MTD 6; Defs.' Mem. Supp. Defs.' MTD 5) — parties must pay their own attorney's fees unless the prevailing party is entitled to fees "by agreement between the parties, statute, or court rule," *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 199 (2d Cir. 2003), and that no such agreement, statute, or rule is present here. (Defs.' Mem. Supp. Defs.' MTD 5). Plaintiff counters that fees *are* authorized by statute — namely, the Declaratory Judgment Act. (Pl.'s Opp'n Defs.' MTD 6-8). But "a party prevailing in an action for declaratory relief is entitled to attorney's fees only when those costs would be recoverable under nondeclaratory judgment circumstances," such as "(i) where, under the restrictive American rule attorney's fees are allowed; and (ii) where controlling substantive law permits recovery." *Brookhaven Science Assoc., LLC v. Donaldson*, No. 04-CV-4013 (LAP), 2007 WL 2319141, at *4 n.18 (S.D.N.Y. Aug. 9, 2007) (internal quotation marks omitted). Accordingly, in the

---

[1]     As an initial matter, the parties dispute whether Defendants' motion should have been brought as a motion to strike. (*Compare* Reply Supp. Defs.' Mot. To Dismiss Compl. In Part (Docket No. 23) ("Defs.' Reply Supp. Defs.' MTD") 2 (listing cases dismissing a prayer for relief for attorney's fees) *with* Mem. Law Opp'n Defs.' Mot. To Dismiss Compl. In Part (Docket No. 21) ("Pl.'s Opp'n Defs.' MTD") 4-6 (listing cases suggesting that the proper vehicle for challenging a prayer for relief is a motion to strike)). The Court need not decide that issue, however, because its conclusion would be the same either way.

absence of another statute, contractual provision, or rule authorizing the award of attorney's fees — none of which Plaintiff cites — the Declaratory Judgment Act does not help Plaintiff.

Nevertheless, even under the American Rule, courts retain the "equitable power to make awards in addition to regular statutory costs, including a reasonable attorneys' fee," in certain circumstances, such as if a party has acted in bad faith. *Id.* (internal quotation marks omitted); *see Sierra Club v. U.S. Army Corp. of Eng'rs*, 776 F.2d 383, 390 (2d Cir. 1985); *see also Mercantile Nat'l Bank at Dallas v. Bradford Trust Co.*, 850 F.2d 215, 218-19 (5th Cir. 1988) (holding in the declaratory judgment context that, while courts may not "automatically award attorney's fees," courts retain the equitable authority to award fees in cases where an express exception to the American Rule is satisfied). Here, although it is quite unlikely that such circumstances exist (as Defendants point out, Plaintiff has yet to claim, let alone allege, bad faith (Defs.' Reply Supp. Defs.' MTD 5)), "courts in this circuit have denied a defendant's motion to strike or to dismiss claims for attorney's fees even though the likelihood that plaintiff will be able to recover attorney's fees is small, because dismissal of such claims at the pleading stage would be premature." *SRSNE Site Grp. v. Advance Coatings Co.*, No. 12-CV-443 (VLB), 2014 WL 671317, at *2 (D. Conn. Feb. 21, 2014) (internal quotation marks omitted). Accordingly, Defendants' motion to dismiss Plaintiff's request for attorney's fees is denied.

**B.      Plaintiff's Motion To Dismiss**

Turning to Plaintiff's motions, Plaintiff moves first to dismiss Defendants' counterclaims for (1) breach of contract due to improper servicing of the Loans, (2) conversion of the Servicing Files, and (3) recovery of chattel. With respect to breach of contract, Plaintiff argues that Defendants' claim must be dismissed because it "does not distinguish between OneWest . . . and 'predecessor servicers,'" for whose conduct Plaintiff claims it is not liable. (Mem. Law Supp.

OneWest's Mot. To Dismiss Lehman's First, Fifth, and Sixth Am. Countercls. (Docket No. 37) ("Pl.'s Mem. Supp. Pl.'s MTD") 8). But the fact that Defendants allege that *both* "OneWest and predecessor servicers" materially breached the Servicing Agreements does not mean that Defendants have inappropriately failed to distinguish between OneWest and IndyMac: It may be that Plaintiff and its predecessors violated the contracts in the same way. (Am. Countercls. ¶ 63). And, in any event, the Amended Counterclaim does include allegations specific to Plaintiff — for example, Defendants allege that, "[f]or each of the Subject Loans, *OneWest* exceeded the permissible timeframes required by Accepted Servicing Practices for the foreclosure sale and/or disposition of property." (*Id.* ¶ 52 (emphasis added)). The point of any prohibition on "group pleading" — to the extent that it even applies in cases against only one party (Mem. Opp'n OneWest's Mot. To Dismiss Lehman's First, Fifth, and Sixth Am. Countercls. (Docket No. 40) ("Defs.' Mem. Opp'n Pl.'s MTD") 15) — is to ensure that the party has notice of the substance of the claims against him. *See, e.g.*, *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004). The counterclaim provides ample notice here.[2]

Next, Plaintiff argues that the breach-of-contract claim should be dismissed as conclusory. (Pl.'s Mem. Supp. Pl.'s MTD 11-12 (citing *WestLB AG v. BAC Fla. Bank*, 912 F. Supp. 2d 86 (S.D.N.Y. 2012); *Wells Fargo Bank, N.A. v. LaSalle Bank Nat'l Ass'n*, No. 11-CV-166 (VMK), 2011 WL 2470635 (N.D. Ill. June 20, 2011)). Defendants, however, have pled that

---

[2] Plaintiff argues that it cannot be held liable as a successor to IndyMac, relying on the agreements governing its purchase of the servicing rights from the Federal Deposit Insurance Corporation, the conservator for IndyMac. (Pl.'s Mem. Supp. Pl.'s MTD 8-9; *see* Decl. Nathaniel Asher, Esq. Supp. OneWest Bank N.A.'s Mot. To Dismiss Lehman's First, Fifth, and Sixth Am. Countercls. (Docket No. 38) ("Asher Decl."), Ex. A §§ 2.03(c), 2.04(i)). Whether or not the Court may consider those agreements at this stage of the litigation, however, it need not — and does not — reach that issue. To the extent that Plaintiff believes that only its predecessor breached the agreement, and that it is not liable for its predecessor's conduct, Plaintiff may raise such arguments either in a motion for summary judgment or at trial.

6

(1) Plaintiff was required to comply with guidelines established by Fannie Mae and Freddie Mac that establish "time periods during which key events should take place for non-performing loans" and (2) it was required to use its best efforts to liquidate "real-estate owned" property (property that fails to sell for equal or greater value than the minimum foreclosure sale bid) within ninety days.  (Am. Countercls. ¶¶ 26 n.1, 30-32).  Defendants further allege that, "[f]or each of the Subject Loans, OneWest exceeded the permissible timeframes . . . and, upon information and believe, no justification or excuse existed to account for the delay."  (*Id.* ¶ 52).  Even more specifically, they claim that "seventeen of the Subject Loans were not liquidated for more than one year beyond the permissible time frame," and that "seven of the Subject Loans were not referred to foreclosure for more than a year — nearly *three times* the time frame Acceptable Servicing Practices required."  (*Id.*).  Those allegations more than suffice at this stage.

In arguing otherwise, Plaintiff points to Defendants' failure to identify "a single loan workout that OneWest improperly rejected" or any specific "indiscretion resulting in unduly delayed foreclosure."  (Pl.'s Mem. Supp. Pl.'s MTD 12-13).  But the "indiscretion" about which Defendants complain is the delay itself, and they have pleaded that that delay was not justified.  And while the allegation that "no justification or excuse existed to account for the delay" is not particularly detailed, "[c]ourts have generally recognized that relatively simple allegations will suffice to plead a breach of contract claim even post-*Twombly* and *Iqbal*."  *Speedfit LLC v. Woodway USA, Inc.*, — F. Supp. 3d —, No. 13-CV-1276 (KAM) (AKT), 2014 WL 5093161, at *11 (E.D.N.Y. Oct. 10, 2014) (internal quotation marks omitted).  Defendants are not required, at this stage of the litigation, to specify with respect to each of the Loans why the delay occurred and the particular circumstances that made the delay unjustified.  Plaintiff also takes issue with Defendants' reference to the Fannie Mae and Freddie Mac guidelines, which the Servicing

Agreements do not mention by name.  (Pl.'s Mem. Supp. Pl.'s MTD 16-17).  But the Servicing Agreements state that Plaintiff was required to follow "Accepted Servicing Practices," defined as "those mortgage servicing practices of prudent mortgage lending institutions."  (Am. Countercls. ¶ 24).  In turn, the counterclaim alleges both that "it is the accepted and customary practice in the mortgage loan servicing industry to set specific timelines for key milestones" (*id.* ¶ 29), and that "[i]n setting [these] timeframes . . . it is customary in the servicing industry to look to the requirements" of Fannie Mae and Freddie Mac (*id.* ¶ 30).  Those allegations may prove to be untrue, but that is a question of fact, which the Court may not resolve on a motion to dismiss.

Plaintiff also claims that Defendants have not adequately pleaded damages.  Specifically, it argues that Defendants "must plead some basis for attributing its losses to OneWest's conduct."  (Pl.'s Mem. Supp. Pl.'s MTD 19).  But Defendants have done so: They allege that Plaintiff caused them to suffer damages "resulting from property value declines, increased expenses and the harmful financial consequences of holding non-performing loans for an unduly long period of time."  (Am. Countercls. ¶ 64).  Plaintiff contends that Defendants' damages are better attributed to the high risk associated with the Loans or the depressed real estate market.  (Pl.'s Mem. Supp. Pl.'s MTD 19-20).  But, again, those are *factual* arguments that are inappropriate at this stage of the litigation.[3]  Nor is Plaintiff's reliance on *WestLB v. BAC Florida Bank*, 912 F. Supp. 2d 86, persuasive.  In that case, the Court found that the plaintiff had not adequately pleaded damages because the only harm it allegedly suffered was a decrease in the value of the collateral used to secure a loan that was not yet in default, and "allegations of a

---

[3]     Because the Court finds that Defendants have adequately pleaded a cause of action for breach of contract even without their allegations concerning the Interagency Review or the Consent Order, it need not address Plaintiff's arguments with respect to those documents.  (*See* Pl.'s Mem. Supp. Pl.'s MTD 13-16).

decrease in the value of collateral are insufficient to adequately plead damages for a breach of contract *to pay money*." *Id.* at 92-93 (emphasis added).  Here, however, the Servicing Agreements were not contracts to pay money; they were contracts to service the loans.  Accordingly, *WestLB*'s damages analysis is inapposite, and Plaintiff's motion to dismiss Defendants' counterclaim for breach of contract is denied.

The Court turns next to Defendants' conversion claim, which alleges that "[t]he Servicing Files and Servicing Records for the Subject Loans are . . . the property of" Defendants and that Defendants have been damaged by Plaintiff's refusal to produce them.  (Am. Countercls. ¶¶ 88-94).  Relying on cases holding that a party may not bring a conversion claim where it is "duplicative of" a breach-of-contract claim, *Transcience Corp. v. Big Time Toys, LLC*, No. 13-CV-6642 (ER), 2014 WL 4827878, at *9 (S.D.N.Y. Sept. 23, 2014), Plaintiff contends that the claim should be dismissed because Defendants' claim rises or falls based on whether they were entitled to the Servicing Files under the terms of the Servicing Agreements.  (Pl.'s Mem. Supp. Pl.'s MTD 21-22; Am. Countercls. ¶¶ 73-87).  In its Complaint, however, Plaintiff claims that, after the Servicing Agreements were terminated, they no longer dictated Defendants' rights to the Servicing Files.  (*See* Compl. ¶¶ 68-72).  And cases have recognized that conversion claims are often not duplicative of breach-of-contract claims where they arise out of a bailor-bailee relationship, *see Hamlet at Willow Creek Dev. Co., LLC v. Northeast Land Dev. Corp.*, 878 N.Y.S.2d 97, 117-18 (App. Div. 2d Dep't 2009), and that is exactly the type of relationship that Defendants allege exists here.  (Am. Countercls. ¶¶ 89-91).  Thus, if Plaintiff's argument that the Servicing Agreements no longer governed the parties' rights to the files after termination prevails, Defendants' rights to the files would be governed not by the Servicing Agreements, but by tort law — and thus the conversion claim is not necessarily duplicative of the breach-of-

contract claim. Accordingly, Defendants may plead a conversion claim in the alternative to their contract claims, and Plaintiff's motion to dismiss the conversion claim is denied.

By contrast, Defendants' final claim, for recovery of chattels, must be and is dismissed. Plaintiff argues that Defendant's recovery-of-chattels claim should be construed as a claim pursuant to Article 71 of the New York Civil Practice Law and Rules, which does not apply here because the Servicing Files are located outside of New York. (Pl.'s Mem. Supp. Pl.'s MTD 22-23). Defendants do not dispute the inapplicability of Article 71, but rather argue that they are not asserting an Article 71 claim. Instead, they claim that they are merely "request[ing] [that] the Court exercise its equitable power and issue an Order of specific performance." (Def.'s Mem. Opp'n Pl.'s MTD 19-20). It is well established, however, that "[s]pecific performance is a remedy, and a remedy itself cannot be a cause of action." *Tierney v. Omnicom Grp. Inc.*, No. 06-CV-14302 (LTS) (THK), 2007 WL 2012412, at *10 (S.D.N.Y. July 11, 2007); *see e.g.*, *RJ Capital S.A. v. Lexington Capital Funding III, Ltd.*, No. 10-CV-25 (PGG), 2011 WL 3251554, at *16 (S.D.N.Y. July 28, 2011). Accordingly, Defendants' recovery-of-chattels claim is dismissed "without prejudice to [Defendants'] ability to request the remedy of specific performance in connection with any of [their] other surviving claims." *Tierney*, 2007 WL 2012412, at *10.[4]

---

[4] Defendants argue that any dismissal of their claims should be granted with leave to amend. (Defs.' Mem. Opp'n Pl.'s MTD 15 n.9). Although leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), it is "within the sound discretion of the district court to grant or deny leave to amend," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). A district court may deny leave to amend where amendment would be futile. *See, e.g.*, *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). That would be the case here, as there is nothing to suggest that Defendants would be able to state a valid recovery-of-chattels claim should the Court grant them leave to amend. *See, e.g*., *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (per curiam) ("Where it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend."). Further, Defendants were previously granted leave to amend their counterclaims to cure the deficiencies raised in Plaintiff's motion to dismiss — and were

**C.     Plaintiff's Motion To Amend**

Finally, Plaintiff requests leave to amend its Complaint to remove its claim for a declaration that it properly serviced the Loans in light of Defendants' "mirror-image" counterclaim.  (Mem. Law Supp. OneWest's Mot. Leave To File Am. Compl. (Docket No. 28) ("Pl.'s Amendment Mem.") 3-4).  In their opposition, Defendants state that they "would not oppose the amendment" if Plaintiff were not simultaneously moving to dismiss their parallel counterclaim.  (Mem. Law Opp'n Pl.'s Mot. Leave To File Am. Compl. (Docket No. 33) ("Defs.' Amendment Mem.") 1).  More specifically, Defendants contend that they would be prejudiced by the amendment because (1) Plaintiff would then "avoid[] the illogical position" of arguing that Defendants' counterclaim is conclusory while pursuing its own similar claim and (2) Plaintiff might argue that Defendants are not entitled to discovery on the relevant issues.  (*Id.* at 5-6).  Those concerns are now moot in light of the Court's denial of Plaintiff's motion to dismiss Defendants' relevant counterclaim.  Even if they were not, they do not provide reasons to deny Plaintiff's motion.  There is nothing illogical about seeking a declaration that a contract was not breached while simultaneously arguing that the other party's counterclaim that the contract was breached is conclusory.  And the Court can (and will) ensure that Defendants are not denied any discovery to which they may be entitled through strategic gamesmanship on Plaintiff's part.  Accordingly, Plaintiff's motion for leave to amend is granted.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is DENIED, Plaintiff's motion to dismiss is GRANTED with respect to the recovery-of-chattels counterclaim and otherwise

---

expressly warned that they would "not be given any further opportunity" to do so.  (Docket No. 31).  Accordingly, leave to amend is denied.

DENIED, and Plaintiff's motion to amend is GRANTED.  Plaintiff shall file its amended complaint within **one week** of the date of this Opinion and Order.

The Clerk of Court is directed to terminate Docket Nos. 9, 27, and 36.

SO ORDERED.

Date: April 20, 2015
New York, New York

_____
JESSE M. FURMAN
United States District Judge